# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| RSL FUNDING, LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-12-1872 |
| | § | |
| JG WENTWORTH ORIGINATIONS, LLC, | § | |
| | § | |
| *Defendant*. | § | |

## ORDER

Pending before the court is a motion to dismiss plaintiff RSL Funding, LLC's ("RSL") supplemental pleading pursuant to Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6) and, alternatively, motion for summary judgment filed by defendant J.G. Wentworth Originations, LLC ("Wentworth").  Dkt. 24.  Having considered the motion, response, reply, and applicable law, the court is of the opinion that the motion should be GRANTED.

## I. BACKGROUND

Wentworth and RSL are competitors in the secondary market for structured settlement receivables.  Dkt. 20.  They purchase structured settlement payment rights from payees.  *Id.*  The Texas Legislature has enacted the Texas Structured Settlement Protection Act ("SSPA")" to protect unwary tort claimants from potential abuse in their transactions with companies that buy tort claimants' future payment rights in exchange for a present lump sum."  Tex. Civ. Prac. & Remedies Code Ann. § 141.001 n.1 (purpose of statute).  Under the SSPA, transactions to purchase settlement payment rights from payees must be approved by a court.  *Id.* § 141.004.  In order to approve the transaction, the court must find that it is in the best interest of the payee, that the payee has been

advised in writing to seek independent professional advice or waived that right, and that the transfer does not contravene a statute, court order, or other government authority.  *Id.*

Some structured settlement payees seek to sell part of their monthly settlement amounts for a lump sum and retain the other portion.  *See generally* Dkt. 20.  Indeed, some payees elect to sell portions of their settlement payment rights multiple times, to multiple purchasers.  *See id.* (discussing multiple transactions relating to Shantel Freelon's settlement payment rights).  Under the SSPA, settlement obligors or annuity issuers "may not be required to divide any periodic payment between the payee and any transferee or assignee or between two or more transferees or assignees." Tex. Civ. Prac. & Remedies Code Ann. § 141.005(4).  Some insurance companies will not agree to split the payments.  *See* Dkt. 20 (noting that PacLife and Confederation Annuity would not agree to split payments of Freelon's annuity).  Wentworth was able to get around this obstacle by obtaining court approval of a payment servicing arrangement whereby the court orders 100% of the payments to be remitted to Wentworth during the payment period set forth in the order, and then Wentworth retains its portion and remits the remainder to the structured settlement payee (the "Wentworth Servicing Plan").  *Id.*

On at least two occasions—one involving settlement payment rights of Shantel Freelon and one involving settlement payment rights of Onexada Perez—RSL has desired to buy other portions of structured settlement payees' payment rights in Texas *after* courts have entered the Wentworth Servicing Plan, and Wentworth has moved to intervene, arguing that the orders it received approving the Wentworth Servicing Plan were final and non-appealable and that the RSL transaction could not be approved because it would contravene the prior orders and the Texas Transfer Statute.  *Id.*  The

Texas courts ultimately approved the RSL transactions in both the Freelon and the Perez cases, and Wentworth has appealed both cases to the First Court of Appeals in Houston.  *Id.*

Florida has a similar but not identical statutory scheme, and Wentworth obtained Florida court approval of the Wentworth Servicing Plan when it purchased portions of settlement payment rights of Annette Protani and Jamie Richard Bentley.  *Id.*  Like the Texas cases, RSL initiated court proceedings to obtain portions of the payments due Protani and Bentley and the courts approved the transactions.  *Id.*  However, in the Protani matter, Wentworth filed a motion to vacate, which was granted after Protani sent in a letter asking that the order be set aside.  *Id.* & Ex. 48.  In the Bentley case, Wentworth "balked at complying with the RSL-Bentley Order," which required Wentworth to receive and service payments for RSL's assignee, Extended Holdings.  Dkt. 20 & Exs. 36, 37.  The Florida court eventually ordered the structured settlement obligor to split the payments between Wentworth and RSL, noting that the Florida statute does not prohibit courts from ordering the obligor to split payments.  Dkt. 20 & Ex. 41.

The instant case is an offshoot of the Freelon matter.  RSL filed its application for transfer of a portion of Freelon's structured settlement payment rights in the 152nd Judicial District Court in Harris County, Texas, on March 27, 2012.  Dkt. 1.  On May 1, 2012, Wentworth filed a plea in intervention and objection to transfer.  *Id.*  On May 24, 2012, RSL filed a "Supplemental Pleading Asserting Claim for Decalratory [sic] Judgment" in the state court against Wentworth.  Wentworth removed the case to this court on May 28, 2012.  *Id.*  RSL filed a motion to transfer the case to Judge Lee Rosenthal in the interest of judicial economy due to Judge Rosenthal's familiarity with the SSPA in Texas and around the country.  Dkt. 2.  RSL also argued that only a state court could approve the transfer of Freelon's settlement funds to RSL.  *Id.*  On October 15, 2013, the court denied the motion

to transfer the case to Judge Rosenthal, but it severed and remanded the claims relating to RSL's request for court approval of the transfer of Freelon's payments to RSL.  Dkt. 13.

In its supplemental pleading, RSL seeks a declaratory judgment stating: (1) the RSL "has a legal right to enter into transactions with annuitants that have non-assigned structured settlement payments rights serviced by Wentworth due to a prior transaction between an annuitant and Wentworth"; (2) "[t]hat it is in the best legal interest of the annuitants to receive and at least be able to consider [RSL's] offers to purchase structured settlement payment rights for monies that belong to the annuitant but are currently being serviced by Wentworth"; (3) "[t]hat Wentworth has imposed an encumbrance on structured settlement payment rights not transferred to it by a court of competent jurisdiction in accordance with Chapter 41 of the Texas Civil Practice Remedies Code in Texas and other states"; (4) that [b]y asserting an encumbrance on structured settlement payments rights not transferred to it by a court of competent jurisdiction in accordance with Chapter 141 of the Texas Civil Practice Remedies Code, Wentworth is subject to a 40% federal excise tax pursuant to 26 U.S.C. § 5891"; and (5) "[t]hat Wentworth has violated the Texas Structured Settlement Protection Act by intentionally objecting to a proposed transfer of structured settlement payment rights between an annuitant and RSL . . . ."  Dkt. 1, Ex. 6.  RSL also requests reasonable attorneys' fees under the Texas Uniform Declaratory Judgments Act.  *Id.*

Wentworth argues that the supplemental claim should be dismissed pursuant to Rule 12(b)(1) because there is no justiciable controversy and pursuant to Rule 12(b)(6) because it contains no factual allegations capable of redress.  Dkt. 24.  Alternatively, Wentworth requests that the court apply the doctrines of abstention, res judicata, and/or collateral estoppel and dismiss RSL's claims or grant judgment as a matter of law in Wentworth's favor.  *Id.*

4

## II.  Declaratory Judgment Act

RSL brought its claim in state court pursuant to the Texas Declaratory Judgments Act.  *See*
Dkt. 1, Ex. 6.  Since a declaratory judgment is procedural rather than substantive, federal courts
cannot award relief pursuant to state declaratory judgment acts.  *See, e.g.*, *Hurd v. BAC Home Loans
Servicing, LP*, 880 F. Supp. 2d 747, 769 (N.D. Tex. 2012).  However, these actions "may be
construed as [actions] brought under the federal Declaratory Judgment Act."  *Id.* (citing 28 U.S.C.
§§ 2201, 2202; *Bell v. Bank of Am. Home Loan Servicing, LP*, No. 11-cv-02085, 2012 WL 568755,
at *8 (S.C. Tex. Feb. 21, 2012) (Ellison, J.)).

The federal Declaratory Judgment Act provides a federal court with jurisdiction over "a case
of actual controversy within its jurisdiction," with some exceptions, to "declare the rights and other
legal relations of any interested party seeking such a declaration, whether or not further relief is or
could be sought."  28 U.S.C. § 2201(a).  In order to satisfy the case-or-controversy requirement, a
dispute "must be 'definite and concrete, touching the legal relations of parties having adverse legal
interests'; and . . . it [must] be 'real and substantial' and 'admi[t] of specific relief through a decree
of a conclusive character, as distinguished from an opinion advising what the law would be upon a
hypothetical state of facts.'"  *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 126, 127 S. Ct. 764
(2007) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41, 57 S. Ct. 461 (1937)).
"Basically, the question in each case is whether the facts alleged, under all the circumstances, show
that there is a substantial controversy, between parties having adverse legal interests, of sufficient
immediacy and reality to warrant the issuance of a declaratory judgment."  *Maryland Cas. Co. v.
Pac. Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510 (1941).

### III. Justiciable Controversy

Wentworth argues that the court does not have jurisdiction over RSL's declaratory judgment lawsuit because there is not an actual controversy within the meaning of the Declaratory Judgment Act. Dkt. 20. Wentworth asserts that RSL is seeking an advisory opinion regarding transactions to which RSL is not a party and has no standing, transactions that have not occurred and may never occur, and which RSL acknowledges allegedly relate to parties who are not involved in this lawsuit. *Id.* Wentworth urges that the relief sought by RSL is too hypothetical, contingent, speculative, and broad to be appropriate for a declaratory judgment action. *Id.*

RSL asserts that there *is* a justiciable controversy: the "encumbrance issue." Dkt. 31. RSL contends that Wentworth's practice of obtaining servicing arrangements whereby non-assigned monies are being serviced by Wentworth constitutes an illegal and undisclosed encumbrance on payment rights not previously approved by a court in accordance with the SSPA. Dkt. 1, Ex. 6. RSL deems Wentworth's practices as constituting an encumbrance because Wentworth is objecting to proposed transfers between RSL and annuitants who have servicing agreements with Wentworth. *Id.* RSL argues that its suit for declaratory relief seeks to establish existing rights, status, or other legal relationships concerning the periodic payments sold by Freelon to both RSL and Wentworth. Dkt. 31. RSL notes that the Perez, Protani, and Bentley matters all demand the same types of declarations.[1] *Id.* RSL states that the dispute compels the court to construe the SSPA's provisions

---

[1] RSL also mentions in its response a matter on appeal in Tennessee involving Laurel J. Shanks, claiming that Wentworth has illegally encumbered her payments as well. Dkt. 31, nn.1-2.

as they apply to these transactions and that there is no hypothetical state of facts stemming from these live controversies.  *Id.*

The court finds that the relief sought by RSL with regard to Wentworth's servicing agreements is not too hypothetical, contingent, or speculative, as there are at least four cases in which Wentworth has already intervened to object to RSL purchasing structured settlement rights due to the servicing agreements.  While the requests are extremely broad, the court has jurisdiction to provide at least some of the relief requested.  Thus, outright dismissal under Federal Rule of Civil Procedure 12(b)(1) is not warranted.  Wentworth's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) is DENIED.

## IV. ABSTENTION

While the court believes it has jurisdiction to enter a declaratory judgment with regard to at least some of RSL's requests, the court believes it inappropriate to enter a declaratory judgment with regard to the requests centering around Wentworth's use of the servicing agreement.[2]  Wentworth argues that the court should abstain from hearing this case even if it has jurisdiction because interference with state court litigation via a declaratory judgment should be avoided.  Dkt. 20.  Wentworth notes that the relief RSL requests with regard to payees with whom RSL has completed transactions (Freelon, Perez, and Bentley) is moot, duplicative, or potentially conflicting with the state court cases.  *Id.*  The cases relating to Freelon's and Perez's structured settlements were resolved in RSL's favor over Wentworth's objection and are currently on appeal in Texas state court.  *Id.*  In the case relating to Bentley's structured settlement, the Florida court entered a final judgment that has not been appealed, and RSL has not been prevented from completing its transaction with

---

[2]  The court addresses the request relating to federal excise taxes in section V, *infra*.

Bentley. *Id.* As far as Protani, the payee herself canceled the transaction with RSL.[3] *Id.* Wentworth argues that "[i]t is neither practical nor wise for this Court to entertain RSL's request for broad declaratory relief, in light of the pending cases, decisions, judgments/orders, and appeals . . . which involve . . . different final state court orders/judgments rendered by different state courts/ the interpretation of two different State transfer statutes; and different rules of procedure and state common law issues." *Id.*

RSL argues that the court has limited discretion to abstain under *Colorado River* because the case involves coercive relief—namely, damages. Dkt. 31. In the prayer of its supplemental pleading, RSL states that it is seeking a declaratory judgment and "that it have and recover a final judgment awarding actual, consequential, incidental, and special damages jointly and severally against [Wentworth]," attorneys' fees and costs, interest, "and all other relief, both at law and in equity, to which [RSL] may be entitled." Dkt. 1, Ex. 6. RSL asserts that abstention should be the exception rather than the rule and that federal courts have a duty to exercise their jurisdiction. Dkt. 31.

First, notwithstanding the boilerplate text in the prayer seeking monetary damages, the court finds that RSL is seeking a declaratory judgment, not monetary relief. The supplemental pleading specifically states that it is for declaratory relief, and it simply requests several different declarations, none of which would result in Wentworth paying actual, consequential, incidental, or special

---

[3] The Shanks case is discussed in RSL's response to Wentworth's motion, but it was not raised in RSL's supplemental pleading. Thus, the court does not address the case.

damages to RSL.  *See* Dkt. 1, Ex. 6.  The court thus construes RSL's supplemental pleading as a declaratory judgment action, not an action for damages.[4]

Federal district courts in the Fifth Circuit consider the following non-exclusive factors when determining whether to abstain from exercising jurisdiction over a declaratory judgment action when there is parallel state litigation:

> "(1) whether there is a pending state action in which all of the matters may be fully litigated;
> (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by defendant;
> (3) whether the plaintiff engaged in forum shopping in bringing the suit;
> (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;
> (5) whether the federal court is a convenient forum for the parties and witnesses;
> (6) whether retaining the lawsuit would serve the purposes of judicial economy; and
> (7) whether the federal court is being called to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending."

*Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 389 (5th Cir. 2003) (quoting *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590-91 (5th Cir. 1994)); *Southwind Aviation, Inc. v. Bergen Aviation, Inc.*, 23 F.3d 948, 950 (5th Cir. 1994) (noting that the standard in *Brillhart v. Excess Insurance Co. of*

---

[4]  If RSL's claim were for "coercive relief," the court would apply the standard set forth in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S. Ct. 1236 (1976), and *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S. Ct. 927 (1983), and it would only be able to abstain if there were "exceptional circumstances."  RSL asserts that it has a claim for "damages" because of the language in the prayer of the supplemental claim.  However, "[a] declaratory judgment plaintiff may not convert a district court's discretionary jurisdiction under *Brillhart/Wilton* into nearly mandatory jurisdiction under *Colorado River* . . . simply by tossing in dependent or boilerplate nondeclaratory requests."  *Riley v. Dozier Internet Law, PC*, 371 Fed. App'x 399, 404 (4th Cir. 2010) (unpublished).

*America*, 316 U.S. 491, 62 S. Ct. 1173 (1942), which is discussed and relied upon in *Sherwin-Williams*, is appropriate when determining abstention issues in a declaratory judgment action).  The Fifth Circuit has noted that the first group of factors relates to "the proper allocation of decision-making between state and federal courts," and that "if the federal declaratory judgment action raises only issues of state law and a state case involving the same state law issues is pending, generally the state court should decide the case and the federal court should exercise its discretion to dismiss the federal suit."  *Id.* at 390-91.  The Fifth Circuit states that the second group of factors considers "fairness," and "the third aspect of the analysis is efficiency."  *Id.* at 391.  Fairness relates to whether the plaintiff is improperly or abusively forum shopping.  *Id.*  As far as efficiency, the Fifth Circuit warns that a "federal district court should avoid duplicative or piecemeal litigation where possible."  *Id.*  "Duplicative litigation may also raise federalism or comity concerns because of the potential for inconsistent state and federal court judgments, especially in cases involving state law issues."  *Id.*

## A.      Allocation of Decisionmaking Authority

The allocation of decisionmaking authority factors weigh heavily in favor of abstention.  While RSL seeks broad declarations relating to Wentworth's practices, in general, there are two claims pending in the Texas state appellate court right now that deal with specific cases in which Wentworth engaged in the conduct about which RSL complains.  This court deems it inappropriate for it to be considering these same issues and perhaps rendering a contrary finding when the issue is a state-law issue that a state appellate court is currently considering, even though it is on a micro, rather than macro, level.

In the Freelon case, after this court remanded the issues relating to Freelon's structured settlement back to the state court, the state court entered a final order approving the transfer of a

portion of Freelon's settlement rights to RSL.  Dkt. 19-16.  The state court stated that it "was not persuaded by Wentworth's arguments" and overruled Wentworth's objection.  *Id.*  The state court ordered that Wentworth remit the Wentworth-serviced payments to RSL, and RSL should then divide and distribute Freelon's remainder payments to Freelon.  *Id.*  The state court judge did not believe that the servicing agreement created an unlawful encumbrance because the servicing agreement's terms were disclosed to the annuitant.  Dkt. 19-17 (transcript of oral hearing in the state court).  Wentworth has appealed, and the matter, along with the Perez case, is pending in the Texas First Court of Appeals.

It appears that, with the exception of the request in the supplemental claim of a declaratory judgment relating to excise taxes, the Freelon case deals on a case-specific basis with all of the issues RSL wishes this court to address on a more general level.  Since the Texas appellate courts are at this moment considering essentially the same issue, and it is a matter of state law, the court does not believe it proper to exercise its jurisdiction in this case.

**B.     Fairness**

The fairness inquiry relates to whether the plaintiff has engaged in forum shopping.  Since in this case the defendant removed the case to federal court, it is clear the plaintiff is not forum shopping.  Rather, RSL appears to simply be attempting to find a one-stop solution to having to litigate the same issue over and over again with Wentworth.  The fairness factors are neutral.

**C.     Efficiency**

The Texas state appellate court is currently considering the same issues that RSL wants this court to decide.  While the Texas decision only covers two cases, rather than applying to the Wentworth servicing arrangement in general as RSL seeks in this case, those cases will still serve

11

as precedent in Texas state courts when RSL and Wentworth encounter this issue again.  Thus, it makes sense for the court to abstain and let the state courts decide this state-law issue.

The court finds that the factors, when considered together, weigh substantially in favor of abstention.  The Texas appellate court currently considering Wentworth's appeals is the most appropriate forum to determine these issues.  "Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." *Brillhart*, 316 U.S. at 495. "[A]bstention from a declaratory judgment action is ordinarily appropriate when the state offers an adequate alternative forum in which to resolve the particular dispute." *Southwind Aviation*, 23 F.3d at 950 (discussing *Brillhart*).  Wentworth's motion to dismiss on abstention grounds the requests for declaratory judgment of all of the requests except the request relating to taxes is GRANTED.

## V. RULE 12(B)(6)

The court has already determined that it should abstain from hearing all of the requests for declaratory relief except for the request relating to federal excise taxes.  Wentworth asserts that the court has no authority to declare that Wentworth is subject to a 40% federal excise tax because the federal Declaratory Judgment Act expressly states that actions relating to federal taxes are not subject to declaratory relief in federal court.  *Id.* at 37.  RSL fails to address the request to dismiss the request relating to taxes under Rule 12(b)(6) in its response.  *See* Dkt. 31.  It does however request the opportunity to cure any pleading deficiencies should the court be inclined to sustain any part of Wentworth's Rule 12(b)(6) challenge.  *Id.*

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 127 S. Ct. 1955 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99 (1957)).  In

considering a 12(b)(6) motion, the court must accept the factual allegations contained in the complaint as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). Additionally, the court does not look beyond the face of the pleadings to determine whether the plaintiff has stated a claim under Rule 12(b)(6). *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 554 (internal citations omitted). The supporting facts must be plausible—enough to raise a reasonable expectation that discovery will reveal further supporting evidence. *Id.*

The court agrees with Wentworth that the Federal Declaratory Judgment Act expressly excludes this relief. The statute has an express exception "with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986." 28 U.S.C. § 2201(a). This case does not relate to section 7428.[5] Thus, RSL fails to state a claim for which relief may be granted with respect to this request. RSL has not provided the court with any argument indicating that an amendment could potentially cure this problem, and the court believes that allowing RSL to replead would be futile. *See Avatar Exploration, Inc. v. Chevron, U.S.A., Inc.*, 933 F.2d 314, 321 (5th Cir. 1991) ("We also affirm denials of motions to amend when amendment would be futile."). Wentworth's motion to dismiss the request for a declaratory judgment relating to Wentworth's

---

[5]  Section 7428 deals with declaratory judgments relating to status and classification of organizations under section 501(c)(3). *See* 28 U.S.C. § 7428.

alleged federal excise tax obligation is GRANTED, and  RSL's request to amend (Dkt. 31) is DENIED.[6]

## VI. Conclusion

Wentworth's motion to dismiss RSL's supplemental claim for declaratory relief is GRANTED.  RSL's supplemental claim is DISMISSED.

Signed at Houston, Texas on December 20, 2013.

_____
Gray H. Miller
United States District Judge

---

[6] Wentworth moves in the alternative for summary judgment.  Since the court is dismissing the claims on other grounds, it need not address the motion for summary judgment.